### UPSON NUT CO. v. H. CHAPIN SONS CO.

(Circuit Court, D. Connecticut. June 27, 1902.)

### No. 1,038.

1. PATENTS—VALIDITY—RIVETING MACHINE.

The Frisbie patent, No. 501,681, for a riveting machine, is void because the patentee was not the inventor of the machine therein shown.

In Equity. Suit for infringement of letters patent No. 501,681, for a riveting machine, granted to Samuel Frisbie July 18, 1893. On final hearing.

George D. Seymour, for complainant.
Wm. E. Simonds, for defendant.

PLATT, District Judge. This case is now before me on its merits, on pleadings and proofs. Complainant owns letters patent No. 501,-681, granted July 18, 1893, to Samuel Frisbie for a riveting machine. The claims are as follows:

"(1) In a riveting machine, the combination with one or more reciprocating hammers, and an anvil arranged in opposition thereto, of step-by-step mechanism for regularly and intermittently reducing the distance between the hammer or hammers and the anvil, the said mechanism being constructed and arranged to operate between the successive blows of the hammer or hammers, substantially as set forth, and whereby the rivets are operated upon progressively, or little by little, instead of all at once.

"(2) In a riveting machine, the combination with one or more reciprocating hammers, and an anvil arranged in opposition thereto, of step-by-step mechanism for imparting a regular, intermittent movement to the anvil toward the hammer or hammers, the said mechanism being constructed and arranged to operate between the successive blows of the hammer or hammers, substantially as described, and whereby the rivets are operated upon progressively, or little by little, instead of all at once.

"(3) In a riveting machine, the combination with one or more reciprocating hammers, and an anvil arranged in opposition thereto, and having its lower face longitudinally inclined, of a bed located below the anvil, and having a corresponding opposite inclination, and step-by-step mechanism for imparting a regular, intermittent movement to the anvil upon its bed, to move it progressively toward the hammer or hammers, the said mechanism being constructed and arranged to operate between the successive blows of the hammer or hammers, substantially as set forth, and whereby the rivets are operated upon progressively, or little by little, instead of all at once.

"(4) In a riveting machine, the combination of a reciprocating slide, carrying one or more hammers, corresponding in number to the rivets to be operated upon, an anvil below said hammers, and adapted to support the work. the anvil inclined upon its under side from one end toward the other, a bed below the anvil, upon which the said inclined surface of the anvil rests, the anvil constructed with an arm projecting from one end, a slide arranged to move in a path at right angles to said arm, the said slide carrying a cam, and the arm carrying a stud against which said cam is adapted to operate, mechanism substantially such as described for imparting to said slide a step-by-step or intermittent movement, which movement will be communicated to the anvil by said cam, and cause the anvil to ride up the inclined surface on which it rests, mechanism substantially such as described to release the said anvil from the action of said slide, and a spring to return the anvil after such release, substantially as and for the purpose described."

Respondents admit that their machine comes within the first three claims of the patent in suit, but contend that they do not infringe upon the fourth claim. As to the fourth claim, they say that it calls for "one or more hammers, corresponding in number to the rivets to be operated upon," but that their machine has only a single hammer, which is so constructed as to operate upon four or five rivets at the same time.

As to the first three claims, they say that they are anticipated in patent to Charles Nobs, No. 383,142, dated May 22, 1888, and they also contend that Samuel Frisbie was not the inventor of the machine described and claimed in the patent in suit. The discussion as to anticipation under the Nobs patent of claims 1, 2, and 3, and noninfringement of claim 4, is an exceedingly interesting one, and I listened to it with much pleasure and profit when the oral arguments were made; but I was then struck with the force of the claim that Mr. Frisbie was not the inventor, and my final conclusions upon that point have relieved me from presenting here an exhaustive analysis of the

other contentions. Let me state, as briefly as I can, my reasons for feeling forced to find that Mr. Frisbie did not invent the machine. Mr. Frisbie sleeps in his final resting place. I knew him well for many years, and ever held him in the highest respect. He was a worthy man and a good citizen. He was, however, a busy man, and it is fair to believe that under all the circumstances, although he obtained the basic idea from Hogarty, and the mechanical adjustment from Campbell via Lamb, he might very easily at a later date have argued himself into the belief that he really did originate ideas which in fact sprang from the brains of others. The basic mechanical idea, i. e., a method of raising the work gradually, "a step-by-step movement," so far as Frisbie is concerned, came from Edward Hogarty, who by placing first one piece of cardboard, then another, and another, under an anvil, showed how step by step the anvil could be raised. Frisbie had the mathematical calculations made, and with them went to the Farrell foundry in Waterbury, and found Mr. Lamb. He there explained that he wanted Hogarty's idea worked out into a practical result. A machine to which the idea could be applied stood there ready, and Frisbie, without explaining how, and in fact without knowing how, the desired result could be reached, left an order to have the machine prepared. This request was delivered by Mr. Lamb to Andrew C. Campbell, and if any inventing was ever done, Mr. Campbell confessedly did that inventing. The mechanism for producing intermittent motion is plainly shown in Campbell's working drawings, and Frisbie in no way contributed to its production. In view of the state of the prior art, it is, at least, very doubtful whether anybody connected with the matter invented anything; but one thing seems to be settled, far beyond reasonable doubt, and that is that look at the case as one may please, and from whatever point of view one wishes, there is no trace of Mr. Frisbie's inventive skill to be found. At best, he could fare no better than a joint inventor with Hogarty and Campbell, and his share in the invention would trench perilously upon the infinitesimal.

From every standpoint, the bill ought to be dismissed, and it is so ordered.